## MATTER OF M/V "CORAL SPRINGS"

### In Fine Proceedings

### MIA-10/12.1043

### *Decided by Board June 2, 1982*

(1) The concept of "strict liability" does not apply until after it has been established that a carrier violated section 273 of the Immigration and Nationality Act, 8 U.S.C. 1323, by bringing undocumented aliens to the United States; however, once that has been established, the carrier's liability for fines is absolute.

(2) Section 273 does not make it unlawful to own a vessel that is used to bring undocumented aliens to the United States or impose a duty upon the owners of vessels to prevent their vessels from being used in that manner.

(3) Where a vessel has been used to bring undocumented aliens to the United States in violation of section 273 of the Act, it will be presumed that the owner of the vessel participated in the bringing of the aliens by permitting his vessel to be used to transport passengers to the United States, in the absence of evidence to the contrary.

(4) The owner has rebutted the presumption that he participated in the bringing of aliens to the United States where he establishes that his vessel was a commercial fishing vessel, that he employed the captain to use the vessel for fishing and not for any other purpose, that he did not know or have any reason to anticipate that the captain would use the vessel to transport passengers to the United States, and that when he learned that the captain intended to use the vessel for that purpose the owner did everything within his power to stop the captain from doing so.

(5) Under agency law principles, the captain's conduct in transporting alien passengers to the United States cannot be imputed to the owner where the captain, who was employed to fish, exceeded the scope of his employment by using the owner's vessel for a purpose distinct from fishing.

In re: M/V "CORAL SPRINGS," which arrived at Key West, Florida, from Cuba, on May 8, 1980. Alien passengers involved: JOSEFINA AROCHA-GARCIA, CIARA ALONSO-HERRERA, ADAN ALONSO-HERRERA, H. ALONSO-HERRERA, ELIO EMILIANO DIAZ-CARRAL, JOSE ANTONIO REYNALDO, et al.

BASIS FOR FINE: Act of 1952—Section 273(a) [8 U.S.C. 1323(a)]

ON BEHALF OF CARRIER:
Fred H. Kent, Jr., Esquire
John F. MacLennan, Esquire of counsel
Edward Ball Building
P.O. Box 4700
Jacksonville, Florida 32201

ON BEHALF OF SERVICE:
Gerald S. Hurwitz
Appallate Trial Attorney

BY: Milhollan, Chairman; Maniatis, Dunne, Morris, and Vacca, Board Members

In a decision dated May 1, 1981, the District Director imposed administrative fines totalling $250,000 upon Richard Young and V.J. O'Neal for 250 violations of section 273(a) of the Immigration and Nationality Act, 8 U.S.C. 1323(a). Mr. O'Neal has appealed. The appeal will be sustained.

The record indicates that Mr. Young, hereafter referred to as "the captain," departed for Cuba on April 27, 1980, from Key West, Florida, aboard a commercial fishing vessel known as the "Coral Springs." On May 8, 1980, he returned to the United States with 250 Cuban national passengers, all of whom were aliens who did not have unexpired visas or other valid entry documents. A Notice of Intention to Fine was served upon the captain on the day of his return from Cuba. On October 20, 1980, a second notice was served upon Mr. O'Neal as the owner of the Coral Springs. Mr. O'Neal will hereafter be referred to as "the owner." These notices alleged that the captain and the owner had violated section 273(a) of the Act by bringing undocumented aliens to the United States.

In a letter dated November 3, 1980, the owner denied liability for any violations of section 273(a) of the Act.[1] According to the owner's letter, he did not know about the captain's voyage to Cuba until a friend called him and told him that the Coral Springs had departed for Cuba. In response to this information, he called the United States Coast Guard office at Key West and asked the officer on duty to stop the captain. The officer replied that he did not have authority to do that, and he advised the owner to contact the Monroe County sheriff's department. The owner then talked to an officer at the Monroe County sheriff's office. This officer explained that he would need a warrant for the captain's arrest to be able to stop him and that the sheriff's department had been advised by the District Attorney that none of the boat captains involved in the Cuban boatlift operations were being prosecuted for bringing Cubans to the United States. The owner concluded at this point that the situation was totally out of his hands, and he waited for the captain's return from Cuba, at which point he fired the captain immediately.

The District Director rejected the owner's defense on the ground that section 273(a) of the Act imposes strict liability.

On appeal, the owner emphasizes that the Coral Springs is a commercial fishing vessel and that he employed the captain to use it for fishing and not for any other purpose. The owner states further that he did not know that the captain intended to use the Coral Springs to transport aliens to the United States; that the captain commandeered the vessel to use it for that purpose without his knowledge; and that upon discovering that the captain had departed for Cuba, he did everything within his

---

[1] The captain also denied liability. The captain, however, has not appealed the District Director's decision. Therefore, the arguments that he raised will not be addressed in this decision.

power to prevent him from reaching Cuba. The owner contends that he is completely innocent of any wrongdoing in this matter and that imposing a $250,000 fine upon him in these circumstances offends American concepts of due process and is fundamentally unfair.

In response to the owner's arguments on appeal, the Immigration and Naturalization Service advocates the position taken by the District Director that the owner's alleged innocence of wrongdoing is immaterial because section 273 of the Act imposes strict liability. The Service argues that fines are imposed under section 273 without regard to the intentions of the carrier and, therefore, that it does not matter whether the carrier knew that his vessel would be used to transport undocumented aliens to the United States. The Service contends that such liability is absolute to the extent that an owner of a vessel would even be liable if his vessel was stolen and then used to transport aliens while it was completely out of the owner's control. In the alternative, the Service contends that a finding of liability would be warranted in any event on the basis of agency law principles because of the employment relationship between the owner and the captain and the fact that the owner provided the captain with the instrumentality that he used to commit the violations.

We are not persuaded by the Service's argument that the owner is liable for fines under section 273 because liability under that section is absolute. Section 273 does not make it unlawful to own a vessel that is used to bring undocumented aliens to the United States, nor does it impose a duty upon the owners of vessels to prevent their vessels from being used in that manner. *Compare* section 271 of the Act, 8 U.S.C. 1321, which provides that it shall be the duty of every person bringing an alien to the United States to prevent the landing of such alien at a port of entry other than designated by the Attorney General. Section 273 proscribes the act of bringing undocumented aliens to the United States. The pertinent part of section 273 states that:

> It shall be unlawful for any person . . . *to bring* to the United States from any place outside thereof . . . any alien who does not have an unexpired visa, if a visa was required under this Act or regulations issued thereunder. (Emphasis added.)

The concept of "strict liability" does not apply until *after* it has been established that a carrier[2] violated section 273 by bringing undocumented aliens to the United States. Once it has been established, however, that a carrier violated section 273, the carrier's liability for fines is absolute. It is not necessary in such a case to establish that the carrier knowingly

---

[2] Some confusion has arisen over the significance of the term "carrier" in this context. That term does not appear in section 273, and it is not used to delineate a class of persons who are liable for violations of that section. It is used merely as a matter of convenience to designate the party or parties who have been charged with violations of section 273.

violated section 273. *Compare* section 274 of the Act, 8 U.S.C. 1324, which includes "knowledge" as an element of a violation. Under section 273, the carrier is an insurer that its alien passengers have met the visa requirements of the Act. Any bringing to the United States of an alien who does not meet those requirements incurs liability. *Matter of M/V "Emma,"* 18 I&N Dec. 40 (BIA 1981); *Matter of Swissair "Flight #164,"* 15 I&N Dec. 1 (BIA 1974).[3]

The owner did not participate directly in the act of bringing aliens to the United States; he did not go to Cuba and transport the aliens to the United States himself. Nevertheless, it is apparent that he was involved to some extent in that he provided the vessel which was used to bring the aliens to the United States. In the absence of evidence to the contrary, we will presume on the basis of such involvement that an owner participated in the act of bringing aliens by permitting his vessel to be used to transport them to this country. In this case, however, we find that the owner has rebutted that presumption.

We are satisfied that the Coral Springs is a commercial fishing vessel, that the owner employed the captain to use it for fishing and not for any other purpose, and that the owner did not know or have reason to anticipate that the captain would use the Coral Springs to transport passengers to the United States from a foreign port. Furthermore, when the owner learned that his vessel had departed for Cuba, he did everything within his power to prevent it from reaching that port, and he fired the captain immediately upon his return to the United States. Finally, although the captain was the owner's employee and therefore an agency relationship existed between them, the captain's conduct was outside the scope of his employment and it was not done on behalf of the owner. On the basis of these findings, we conclude that the owner did not participate in the bringing of aliens to the United States aboard his vessel. Consequently, as the owner did not bring undocumented aliens to the United States, he is not liable for fines under section 273. Accordingly, the following order will be entered.

**ORDER:** The owner's appeal is sustained.

**FURTHER ORDER:** The fines imposed upon the owner by the District Director are cancelled and the proceedings against the owner are terminated.

---

[3] Section 273(c) permits remission (forgiveness in full) in one circumstance: where it appears that prior to the departure of the vessel from the last port outside the United States, the carrier did not know, and could not have ascertained by the exercise of reasonable diligence that the individual transported was an alien and that a visa was required.